## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## EASTERN DIVISION

| | |
|---|---|
| STARBUCKS CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>WORKERS UNITED, d/b/a STARBUCKS WORKERS UNITED, CHICAGO AND MIDWEST REGIONAL JOINT BOARD, INC., and IOWA CITY STARBUCKS WORKERS UNITED,<br><br>    Defendants. | Civil Action No. 3:23-cv-00068<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Starbucks Corporation ("Starbucks" or "Plaintiff"), by its undersigned attorneys, hereby alleges by way of this Complaint against Defendants Workers United, d/b/a Starbucks Workers United ("SBWU"), Chicago and Midwest Regional Joint Board, Inc. ("CMRJB"), and Iowa City Starbucks Workers United ("Iowa City SBWU") (collectively, "Defendants") the following:

### NATURE OF THE ACTION

1.      This is an action concerning actual and threatened injury to the safety, well-being, operations, and reputation of Starbucks and its employees caused by

Defendants' unauthorized use of the famous Starbucks name and logos that copy the famous Starbucks logos in a manner that has led, among other things, to property damage, threats, and calls for a boycott against Starbucks. Of most urgency to Starbucks is the use of the Starbucks name and copycat Starbucks logos in recent social media posts by Defendants in the wake of the October 7, 2023 attack in Israel, which were widely interpreted by the public as support for that violence. The use of Starbucks name and logos caused confusion among the public that Starbucks had made or endorsed Defendants' viewpoints. This led to substantial threats to the safety of Starbucks employees, harm to Starbucks brand and reputation, and other business harm. If not enjoined, those threatened and actual harms will continue.

2.      Moreover, since before the events of October 7th, Defendants have made widespread use of the Starbucks name and copycat Starbucks logos in connection with fundraising, on merchandise, and in advocating Defendants' points of view about a range of other political and social topics. The Defendants' use of the Starbucks name and copycat Starbucks logos has misled many customers to believe, mistakenly, that Starbucks was the source of, or at least approved or endorsed, the viewpoints put out by Defendants, and they accordingly have directed their reactions to Starbucks. Starbucks thus has been deprived of its ability to frame its own messaging about these topics, or decline to take positions on these topics.

3.      Notably, before the wave of infringing social media posts by Defendants concerning the October 7th attack, Starbucks had not issued a public statement pertaining to the conflict. In an effort to mitigate the confusion caused by Defendants, Starbucks issued statements, which included unequivocally condemning acts of hate, terrorism, and violence and clarifying that Defendants do not speak for Starbucks.

4.      Despite that attempted mitigation, the confusion, harm, and safety concerns have persisted. None of this would have occurred had Defendants not used Starbucks name and intellectual property. Starbucks thus brings this suit to remedy the irreparable harm caused by Defendants' use of Starbucks name and copycat Starbucks logos.

5.      To be clear, Starbucks respects Defendants' right to express their viewpoints about the conflict in the Middle East and other political and social issues; Starbucks does not bring this action to stifle their speech or express a view on Defendants' positions or those issues. Instead, Starbucks brings this action to protect the safety of those working in its retail locations around the world, and to halt the damage to its business that has resulted from Defendants' misuse of Starbucks name and logos when expressing their views.

6.     Specifically, Starbucks asserts claims for dilution arising under 15 U.S.C. § 1125(c) and Iowa Code § 548.113, trademark infringement arising under 15 U.S.C. § 1114, trademark infringement, false affiliation, unfair competition, false designation of origin arising under 15 U.S.C. § 1125(a) and the common law of Iowa, copyright infringement arising under 17 U.S.C. 101 *et seq.*, and contributory and/or vicarious infringement.   These claims arise directly from Defendants' unauthorized and repeated instances of copying and use of Starbucks trademarks and copyrighted works, in violation of state and federal law, which have damaged Starbucks reputation and business, weakened the distinctive quality of Starbucks trademarks, and infringed Starbucks rights in its intellectual property.

## PARTIES

7.     Starbucks is a corporation formed under the laws of the State of Washington, with its principal place of business located in Seattle, Washington.

8.     Upon information and belief, Workers United is an unincorporated association whose members include various groups of employees throughout the country, and is an affiliate of Service Employees International Union ("SEIU") pursuant to a formal Affiliation Agreement. According to its website, https://workersunited.org/, Workers United is located in Philadelphia, Pennsylvania, with regional joint boards and local unions located throughout the United States.

9.     Upon information and belief, SBWU is an affiliate, trade name, and/or agent of Workers United, and is an organization comprising certain Starbucks employees from stores from around the country. According to its website, https://sbworkersunited.org/, SBWU is located in Buffalo, New York, "and Everywhere in the United States." (https://sbworkersunited.org/). Upon information and belief, SBWU includes dozens of local chapters based out of multiple states and cities, including Iowa, Maryland, California, Florida, Texas, Massachusetts, Arizona, Illinois, and New Jersey, among many others. Upon further information and belief, SBWU's leaders act as agents of and have received compensation from Workers United for their organizing and advocacy work on SBWU's behalf.

10.    Upon information and belief, CMRJB is a non-profit Illinois corporation with its headquarters in Chicago, Illinois. CMRJB is affiliated with and is a joint board of Workers United, which is in turn affiliated with SEIU, and possesses charter documents from Workers United and SEIU.  CMRJB is affiliated with and oversees various local unions within a defined geographic range, including Iowa City SBWU.

11.    Upon information and belief, Iowa City SBWU is an unincorporated association located in Iowa City, Iowa, associated with Starbucks store number 2855, and operating in the State without a certificate of authority.  It is affiliated with

SBWU as a local chapter thereof, and is likewise a local union of Workers United, including as a union within the geographic coverage range of, and subject to oversight from, CMRJB.  Iowa City SBWU possesses charter documents from Workers United and SEIU.

12.   Upon information and belief, relevant non-party SEIU is an unincorporated association, headquartered in Washington, D.C., with activities throughout the United States.  Upon information and belief, SEIU is affiliated with and exercises supervision over Workers United and the other Defendants pursuant to a formal Affiliation Agreement.

## JURISDICTION AND VENUE

13.   This action involves federal claims arising under the United States Trademark Act of 1946 (Lanham Act), 15 U.S.C. § 1051 *et seq.* and United States Copyright Act, 17 U.S.C. § 101 *et seq.* This Court therefore has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121(a).

14.   This Court has supplemental jurisdiction over the related state law claims in this action under 28 U.S.C. § 1367(a) as those claims are so related to the claims under federal law so as to form part of the same case or controversy.

15.     The Court has personal jurisdiction over Defendants because, upon information and belief, Plaintiff's claims arise from and are related to Defendants' actions within Iowa, and because Defendants purposely directed their activities at Iowa residents, and the litigation results from alleged injuries that arise out of and relate to those activities.

16.     Venue in this district is appropriate under 28 U.S.C. §§ 1391(b) and 1391(c) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## BACKGROUND

### Starbucks History

17.     Starbucks is the leading coffee roaster and retailer in the United States. Since 1971, when Starbucks opened its first store, Starbucks has grown to over 17,000 United States retail locations and approximately 38,000 retail locations in over 84 foreign markets. Starbucks has the following mission:  "With every cup, with every conversation, with every community—we nurture the limitless possibilities of human connection." That mission extends to baristas and customers around the globe, who bring different backgrounds, lived experiences, and worldviews to Starbucks.

18.     Starbucks retail stores throughout the United States sell coffee, tea, and other food and beverages, as well as Starbucks-branded merchandise, such as coffee mugs, glassware, coffee-related equipment, and other products. This merchandise prominently displays Starbucks-owned trademarks, service marks, and copyrighted works (the "Starbucks Marks" and "Starbucks Works," respectively), as seen in the examples below:




Siren Logo



40th Anniversary Siren Logo

# STARBUCKS

19.     Starbucks retail stores throughout the world conduct billions of transactions each year. In addition to retail stores, Starbucks promotes its products and services on its website Starbucks.com. Both the Starbucks Marks and Starbucks Works are displayed prominently on the Starbucks.com website.

20.     In addition to directly selling its products in its own retail stores, Starbucks also serves its coffee and other products through authorized parties ("Authorized Sellers") throughout the United States. These Authorized Sellers

Case 3:23-cv-00068-SHL-SBJ   Document 13   Filed 11/10/23   Page 9 of 66

include, but are not limited to, bookstores, grocery stores, airports, restaurants, and entertainment venues. Starbucks licenses the Starbucks Marks and Starbucks Works under one or more license agreements to the Authorized Sellers. The license agreements ensure that Starbucks products are only distributed through Authorized Sellers who must adhere to Starbucks quality control procedures and standards. By controlling distribution of Starbucks products and services, Starbucks monitors and controls the use of the Starbucks Marks and the Starbucks Works.

21.    Starbucks maintains its own official social media accounts, including, but not limited to, a Facebook page (www.facebook.com/Starbucks), an X (formerly known as Twitter) account (www.twitter.com/Starbucks), an Instagram page (www.instagram.com/Starbucks), a TikTok account (www.tiktok.com/@starbucks), and a LinkedIn page (www.linkedin.com/company/Starbucks). Collectively, Starbucks social media pages are followed by hundreds of millions of consumers and have extensive engagement. For example, the Starbucks Facebook page has more than 35 million followers and 36 million likes. The Starbucks X account has over 10.9 million followers and the Starbucks TikTok page has over 10 million likes. All of these platforms prominently feature the Starbucks Marks.

-9-

22.     Starbucks diligently monitors all of its official distribution channels to ensure compliance with its policies and standards to manage the brand's image and public perception.

23.     Numerous television programs and movies have prominently featured the Starbucks Marks, including *The Devil Wears Prada, Sex and the City, Parks & Rec, The Voice, Ellen, Real Time, Zoolander, License to Wed, The Proposal, Clueless, 127 Hours, Jurassic World, You've Got Mail, Austin Powers: The Spy Who Shagged Me, Fight Club, The Terminal, Josie and the Pussy Cats, Miss Congeniality, Clueless, Made of Honor, Meet the Fockers, 13 Going on 30, In Good Company*, and *I Am Sam*.

24.     Brand studies routinely place Starbucks among the most recognized and valuable brands in the world. For example, in its 2023 study, BrandZ ranked Starbucks as the 27th Most Valuable Brand in the World, ranked in between famous brands like T-Mobile and Walmart, and above well-recognized brands like YouTube, Netflix, and The Walt Disney Company. As another example, the 2023 "Restaurants 25" report from an independent brand valuation consultancy, Brand Finance, Starbucks was ranked the number one most valuable restaurant brand in the world.

25.     As a result of the foregoing sales and marketing activities, the Starbucks Marks have become famous and highly distinctive trademarks with an unmatched reputation of excellence.

## Starbucks Trademarks and Copyrights

26.     For decades, Starbucks has continuously used its famous and highly distinctive marks, including the STARBUCKS word mark, which has been used since Starbucks was founded in 1971, as well as the famous Siren Logo (used since 1992) and the more recent 40th Anniversary Siren Logo (used since 2011) (shown collectively below) in United States commerce in connection with a wide variety of goods and services to promote Starbucks brand and to identify its goods and services. The United States Patent and Trademark Office has granted dozens of trademark registrations for the Starbucks Marks, as further detailed below. Additionally, the Starbucks Marks have been registered in over 180 countries.






Siren Logo                    40th Anniversary Siren Logo

# STARBUCKS

27.    These registrations recognize the exclusive rights held by Starbucks in the world-famous Starbucks Marks.

28.    Starbucks owns multiple trademark registrations in the Siren Logo. These registrations include, but are not limited to, U.S. Trademark Registration Nos. 1,815,938 (registered January 11, 1994) in connection with, *inter alia*, "ground and whole bean coffee," "retail store services featuring [coffee]," and "restaurant and café services"; 3,298,945 (registered September 25, 2007) in connection with, *inter alia*, "[c]offee, . . . prepared coffee and coffee-based beverages; prepared espresso and espresso-based beverages"; 3,673,335 (registered August 25, 2009) in connection with "[d]airy-based food beverages"; and 3,702,367 (registered October 27, 2009) in connection with, *inter alia*, "[f]ruit drinks and soft drinks containing fruit juices". These registrations are valid, subsisting, and incontestable. True and correct copies of the registration certificates are attached hereto as Exhibit 1.

29.    Starbucks owns multiple trademark registrations of the Siren Logo in the familiar green, black, and white color scheme. These registrations include, but are not limited to, U.S. Trademark Registration Nos. 1,815,937 (registered January 11, 1994) in connection with, *inter alia*, "ground and whole bean coffee," "retail store services featuring [coffee]," and "restaurant and café services"; 2,266,351 (registered August 3, 1999) in connection with, *inter alia*, "ground and whole bean

coffee"; and 2,266,352 (registered August 3, 1999) in connection with, *inter alia*, "restaurant, cafe and coffee house services". These registrations are valid, subsisting, and incontestable. Starbucks also owns a valid and subsisting registration in the green, black, and white Siren Logo in connection with "retail store services in the field of tea, food, beverage" under Reg. No. 6,783,025 (registered July 5, 2022). True and correct copies of the registration certificates are attached hereto as Exhibit 2.

30. Starbucks owns United States Copyright Reg. No. VA 875-932 for the Starbucks Siren Logo. A true and correct copy of the copyright registration certificate for this work is attached hereto as Exhibit 3.

31. Starbucks owns multiple trademark registrations in the 40th Anniversary Siren Logo. These registrations include, but are not limited to, U.S. Trademark Registration Nos. 4,415,862 (registered October 8, 2013) in connection with a variety of goods and services, including "paper boxes and paper packaging," "paper cups," and "[p]roviding on-line chat rooms, bulletin boards and community forums for the transmission of messages among computer users concerning entertainment, music, concerts, videos, radio, television, film, news, sports, games and cultural events"; 4,538,053 (registered May 27, 2014), in connection with, *inter alia*, "milk based beverages," "coffee . . . and espresso beverages, . . . beverages

made with a base of coffee and/or espresso," "retail store services in the field of coffee," and "café, . . . coffee bar . . ., carry out restaurant services, . . . coffee supply services for offices," "napkins, paper bag," "retail store services in the field of . . . clothing, caps and hats," and "[f]inancial services, namely, credit, and stored-value card services; charitable fund raising services"; and 4,639,908 (registered November 18, 2014) in connection with a variety of goods and services, including "[t]-shirts, polo shirts, sweatshirts, caps, hats, jackets, aprons and vests," "jewelry" and "providing information in the fields of news and current events in the fields of health and wellness, music, travel, arts and leisure activities, human interest via communications networks." These registrations are valid, subsisting, and incontestable. Starbucks also owns a valid and subsisting registration in the 40th Anniversary Siren Logo in connection with "[p]romoting business, sports and entertainment events of others" under Reg. No. 6,805,224 (registered July 26, 2022). True and correct copies of the registration certificates from the USPTO website are attached hereto as Exhibit 4.

32.   Starbucks owns multiple trademark registrations for the 40th Anniversary Siren Logo in the familiar green and white color scheme.  These registrations include, but are not limited to, U.S. Trademark Registration Nos. 4,538,585 (registered May 27, 2014) in connection with, inter alia, "paper cups" and

"providing on-line chat rooms, bulletin boards and community forums for the transmission of messages among computer users concerning entertainment, music, … videos, … news, … and cultural events"; 4,572,688 (registered July 22, 2014), in connection with, *inter alia*, "insulated coffee and beverage cups, . . . glassware," "[t]-shirts, polo shirts, sweatshirts, caps, hats, jackets," "business administration; business management; franchising," "coffee . . . and espresso beverages, . . . beverages made with a base of coffee and/or espresso," "retail store services" and "computerized on-line [retail and] ordering services in the field of coffee, . . . jewelry . . . clothing, caps and hats," "[f]inancial services, namely, debit, credit, and stored-value card services; charitable fund raising services," and "café, . . . coffee bar . . . , and carry out restaurant services, . . . coffee supply services for offices"; and 4,635,864 (registered November 11, 2014), in connection with a variety of goods and services, including "jewelry," "[t]-shirts, polo shirts, sweatshirts, caps, hats, jackets, aprons and vests," and "[f]inancial services, namely debit and stored-value card services; charitable fund raising services." These registrations are valid, subsisting, and incontestable. True and correct copies of the registration certificates from the USPTO website are attached hereto as Exhibit 5.

33.     Starbucks is the owner of United States Copyright Reg. No. VA 1-768-520 for the Starbucks 40th Anniversary Siren Logo. A true and correct copy of the copyright registration certificate for this work is attached hereto as Exhibit 6.

34.     Starbucks also owns numerous registrations for the STARBUCKS word mark. These registrations include, but are not limited to, U.S. Trademark Registration Nos. 1,444,549 (registered June 23, 1987) in connection with "retail store services and distributorship services for coffee, tea" and "coffee café services"; 2,073,104 (registered June 24, 1997) in connection with, *inter alia*, "[w]holesale supply services featuring ground and whole bean coffee, tea, cocoa, coffee and espresso beverages" and "[r]estaurant, cafe and coffee house services"; 2,086,615 (registered August 5, 1997) in connection *inter alia* with "ready-to-drink coffee, ready-to-drink coffee based beverages"; 3,235,732 (registered May 1, 2007) in connection with "coffee roasting and processing"; 2,180,760 (registered August 11, 1998) in connection with "tote bags";  2,189,460 (registered September 15, 1998) in connection with, *inter alia*, "insulated coffee and beverage cups" and "coffee cups, tea cups and mugs, beverage glassware"; 2,176,974 (registered July 28, 1998) in connection with "[t]-shirts, polo shirts, sweatshirts, caps, hats, jackets, and aprons"; 1,452,359 (registered August 11, 1987) in connection with "coffee, tea, herb tea, chocolate and cocoa"; 1,372,630 (registered November 26, 1985) in connection with

"coffeepots, cups, mugs and cannisters." These registrations are valid, subsisting, and incontestable. True and correct copies of the registration certificates are attached hereto as Exhibit 7.

35.     Starbucks devotes a significant amount of time, energy, and resources into protecting its Starbucks Marks and Starbuck Works. By limiting distribution of the Starbucks products to channels involving Authorized Sellers, Starbucks maintains its reputation and integrity, as well as ensures customers' safety and satisfaction.

36.     Because of Starbucks products' superior quality and exclusive distribution channels, the public recognizes Starbucks as a source of high-quality products. As such, Starbucks has developed extraordinarily strong rights in the famous Starbucks Marks, and those Marks thus are entitled to very broad protection.

## Defendants and Their Affiliations

37.     Upon information and belief, the Defendant entities are affiliated with each other, and with non-party SEIU, through formal agreements and informal arrangements, including the Workers United Constitution, an Affiliation Agreement between Workers United and SEIU, and the provision of Workers United and SEIU charter documents.

38.     Upon information and belief, the Workers United Constitution, *inter alia*, establishes a governance structure for the broader network of Workers United affiliates, acknowledges the affiliation between Workers United and SEIU, and imposes obligations on regional joint boards, local unions and their members, and other subordinate bodies affiliated with Workers United, including:

a.      Establishment of a General Executive Board with supervisory authority over all affairs of Workers United and its affiliates, including issuing charters to recognize new affiliates, disciplining affiliates for misconduct, approving affiliations or mergers among Workers United affiliates, and auditing affiliates' finances,

b.      Coordination of worker strikes,

c.      Requirement that local unions adopt bylaws, with reference to model bylaws attached to the Workers United Constitution,

d.      Formation of so-called "joint boards" to organize and supervise the activities of two or more local unions within a given geographic region,

e.      Collection of dues from individual members, and collection of affiliate contributions to a Strike and Defense Fund and a Political Fund,

f.      Holding of regular conventions of delegates representing local union affiliates and joint boards to carry out union business, and

g.     Binding Workers United affiliates to the SEIU Code of Ethics.

39.    The Workers United Constitution vests the Workers United President with authority over all Workers United labels, trade names, trademarks, and other insignia, including the ability to approve a form of any insignia, and direct affiliates—which include SBWU, CMRJB, and Iowa City SBWU—with regard to the issuance or possession of insignia.

40.    Pursuant to the Workers United Constitution and structure described above, Workers United exercises supervisory authority and control over CMRJB, SBWU, and Iowa City SBWU; and CMRJB exercises supervisory authority and control over Iowa City SBWU.  In addition, upon information and belief, the Workers United President exercises supervisory authority and control over all Defendants' logos, including imitations of the Starbucks Marks and Starbucks Works, and uses thereof.

41.    Upon information and belief, Workers United and SEIU entered into a formal Affiliation Agreement in 2009, which includes, *inter alia*:

a.     Grant of SEIU charters to all Workers United local unions and joint boards,

b.     SEIU decision-making involvement in provisioning and revoking Workers United charters for local unions,

-19-

c.      Financial responsibilities and powers among SEIU, Workers

United, and Workers United local unions, including SEIU's authority to audit

Workers United and local Workers United unions.

42.     Through the Affiliation Agreement, SEIU shares in the responsibilities

and powers of Workers United as described above, including supervision of Workers

United's affiliates.

43.     Upon information and belief, SBWU, an affiliate, trade name, and/or

agent of Workers United, acts as a collective of Starbucks employees from

approximately 325 company-operated stores throughout the United States (3% of

U.S. company operated stores).  Upon further information and belief, its leaders and

organizers act as agents of and have received compensation from Workers United.

44.     SBWU promotes an attributed website (https://sbworkersunited.org/)

and social media accounts, including an X account (twitter.com/sbworkersunited),

Facebook     account     (facebook.com/sbworkersunited),     Instagram     account

(instagram.com/sbworkersunited)              and              TikTok              account

(tiktok.com/@sbworkersunited).

45.     As affiliated entities, Iowa City SBWU, CMJRB, SBWU, Workers

United, and SEIU support and share each other's messaging across their social media

accounts, including by reposting, "quote" posting, or "liking" each other's posts on

X,[1] some of which include photos that contain the infringing names and logos at issue in this case.  Workers United promotes attributed social media accounts, including an X account (twitter.com/WorkersUnited).  SEIU promotes attributed social media accounts, including an X account (twitter.com/SEIU). CMRJB promotes attributed social media accounts, including an X account (https://twitter.com/CMRJB). Iowa City SBWU promotes attributed social media accounts, including an X account (twitter.com/IowaCitySBWU).

46.     SBWU's website, *inter alia*, invites employees of Starbucks retail locations to "reach out" to SBWU if they are "ready to join our union."  The SBWU website also directs press inquiries regarding SBWU to a Workers United email address, starbucksmedia@workers-united.org.

47.     Upon information and belief, employees at Starbucks store number 2855 in Iowa City, Iowa reached out to SBWU in early 2023 for assistance in forming a local union, which SBWU provided, leading to the formation of Iowa City SBWU.

---

[1] For the purposes of this Complaint, "reposting" refers to a post in which an X account posts verbatim the post of another account without addition of any content, and "quote" posting refers to a post in which one X account's post is visually embedded with another, and in which the secondary poster adds additional content or commentary. "Liking" a post does not cause an account to create a new post of its own, but rather reflects such an endorsement on the original post.

48.     National Labor Relations Board records indicate that certain employees of the Starbucks Iowa City location filed an RC Petition on March 27, 2023, and the NLRB tallied ballots on May 11, 2023.  *See* Exhibits 8, 9, 10.  The records identify the associated labor union as "Chicago and Midwest Regional Joint Board, Workers United/SEIU, affiliated with Workers United/SEIU," which the NLRB certified as the collective-bargaining representative of certain employees at the Starbucks Iowa City location on May 18, 2023.  *Id.*

49.     Upon information and belief, following the tally of votes in favor of unionization, Iowa City SBWU received charter documents from Workers United and SEIU, and became subject to the supervision and control of Workers United, SEIU, and CMRJB.

## Defendants' Wrongful Acts

50.     Defendants, without Starbucks authorization, have adopted for their own use, and ubiquitously use, the STARBUCKS word mark and various logos (referred to herein as "Accused Marks") that copy and/or closely resemble the Starbucks Marks and Starbucks Works, including as shown in the following examples:

| **Accused Marks** | **Starbucks Marks** |
|---|---|
|  |  |
| | Siren Logo |
|  |  |
| | 40th Anniversary Siren Logo |

51.     SBWU has on multiple occasions used each of the Starbucks Marks and Starbucks Works (or slight variants thereof), including on its website, as its "profile picture" on social media accounts, in social media posts, and on various forms of merchandise, as seen in the examples below:

## Facebook page



## TikTok Account



## X Account[2]



---

[2] SBWU's X and Instagram Accounts temporarily use variations of the SBWU logo. As captured in the following images, and upon information and belief, SBWU previously used an orange version of the logo with pumpkins in the background between August and October 2023.  Upon information and belief, SBWU switched from the green version (displayed on all of its other social media pages) when Starbucks rolled out its fall menu at the end of August 2023.  Upon information and belief, SBWU switched from the orange version of the logo to a holiday themed version on November 1, 2023 when Starbucks rolled out its seasonal holiday menu.

## Instagram



## Website



**360+ STORES UNIONIZED.**
**9,000+ UNION PARTNERS.**

will you stand in solidarity with us?

SIGN THE #NOCONTRACTNOCOFFEE PLEDGE

52.     SBWU's website has a "Shop Official Merch" webpage where it sells signs, T-shirts, pins, hats, mugs, cups, and masks prominently coopting the

Starbucks Marks and Starbucks Works, as shown in the below examples from the SBWU website.



Logo Tee
$27.00

Logo Hat
$27.00

Logo Button
$5.00

Logo Face Covering
$25.00

Logo Mug
$25.00

Yard Sign
$20.00

     53.    SBWU additionally uses the Starbucks Marks and Starbucks Works in connection with social media posts to solicit cash tips from Starbucks customers and to promote various fundraisers.  For example, the posts link to various GoFundMe pages that themselves display the Starbucks Marks and Starbucks Works.

54.     Upon information and belief, SBWU also uses the Starbucks Marks and Starbucks Works to support advocacy regarding a variety of political and social justice issues.

55.     Following its formation, Iowa City SBWU adopted and began to publicly use the SBWU logos; Iowa City SBWU's X account prominently displays the coopted Starbucks Marks and Starbucks Works, as seen below.



56.     Like SBWU, Iowa City SBWU uses the Starbucks Marks and Starbucks Works in connection with soliciting tips and donations.

57.     Like SBWU, Iowa City SBWU posts and shares posts about a wide variety of subjects, including, but not limited to, international affairs, trash collection, rights for transgender individuals, and local jails.

58.     Defendants support and share each other's messaging across their social media accounts, including posts with photos that contain the infringing logos at issue in the case.

59.     CMRJB's website, http://cmrjb.org, expresses "Solidarity with our SBWU siblings!" and includes the unauthorized uses of Starbucks Marks and Starbucks Works both as source indicators and in photographs of members bearing the infringing logos.



60.    CMRJB also uses the Starbucks Marks and Starbucks Works in connection with posts encouraging consumers to purchase items at Starbucks stores and to leave employees cash tips.

61.    Upon information and belief, CMRJB uses the Starbucks Marks and Starbucks Works in connection with collecting donations and fundraising, as well as its social media posts requesting donations.

62.    The Workers United website, https://workersunited.org, includes a dedicated page to "Starbucks" and SBWU, https://workersunited.org/starbucks, which is featured in the top ribbon of the website. The dedicated Starbucks page on the Workers United website, http://workersunited.org/starbucks, invites visitors to "Find our [sic] more about our Starbucks organizing campaigns all across the country, including what YOU can do to help, by visiting our website (click the box below)." It also advertises and directs traffic to the SBWU store described above, noting "Plus, we have some great merch!" The page provides links to SBWU's website and social media accounts, and includes the coopted Starbucks Marks and Starbucks Works both directly and in a photograph of members bearing the infringing logos.



63.     Defendants have coopted the entirety of each of the Starbucks Marks and Starbucks Works for various publicity, advertising, fundraising, and promotional purposes.

64.     Given the Accused Marks' similarities to the Starbucks Marks, the Accused Marks are likely to convey to consumers a false affiliation, endorsement,

or sponsorship with Starbucks. Indeed, the similarity between the marks has already caused substantial, demonstrated, and harmful confusion, as discussed further below.

65.     Starting October 7, 2023, as reports of the attacks emerged, Defendants and their affiliates posted or shared on their official social media accounts various concerted statements. For example, SBWU posted on X, using the Starbucks Marks and Starbucks Works, stating "Solidarity with Palestine."  That post contained more than this statement alone.  Rather, that quote was directed to amplify the message below, which described the picture in the post as the "Bulldozer operated by Gaza Resistance tearing down" a fence on the Gaza strip during the attack on Israel on October 7:



This was posted at a time when the world had just seen images of assaults on families and upon a peaceful music festival and heard the reports of deaths from those attacks. Based on this post alone, people reacted with outrage, directed toward *Starbucks*, at this post's perceived endorsement of violence.

66.    Additionally, the same day of the initial attacks in Israel and continuing even as recently as the day before filing this action, Iowa City SBWU posted and reposted on social media messages advocating for the continuation of violence against Israel and cessation of U.S. aid to Israel, including the following:













67.     Defendants' use of Starbucks Marks and Starbucks Works to issue posts about these topics, which have nothing to do with the terms and conditions of employment at Starbucks stores, created a strong likelihood that Defendants' activities would be attributed to Starbucks.

68.     Iowa City SBWU reposted an October 20, 2023 SBWU post regarding the Middle East conflict and SBWU's support of Palestine:



69.     Affiliates of Defendants, using the Starbucks Marks and Starbucks Works, have also posted additional content that the public has viewed as inflammatory, and as expressed or endorsed by Starbucks.

70.     As a result of the social media posts by Defendants using the Starbucks Marks and Starbucks Works, without Starbucks authorization, customers and the public incorrectly believed Starbucks had directly expressed or endorsed those statements. Defendants single-handedly made Starbucks a target in the polarized rhetoric surrounding an active armed conflict that has resulted in thousands of deaths. Starbucks received hundreds of complaints from customers and other members of the public in the immediate aftermath, rebuking and singling out *Starbucks*—not Defendants—for supporting "Hamas" and "terrorism." Starbucks continues to receive such complaints as a direct result of the demonstrable consumer confusion as to responsibility and actual beliefs created by Defendants' use of Starbucks Marks. Such complaints vividly illustrate the actual confusion and dilution (most notably, in the form of tarnishment) caused by Defendants' use of the Starbucks Marks and Starbucks Works and the resulting danger to employee safety and well-being. At this point in time, Starbucks had not issued a public statement regarding the conflict.

71.    On October 11, 2023, an angry customer twice called the Seattle Starbucks Reserve® Roastery and threatened to "shut down" the roastery and all Starbucks stores.  The caller also said that he hoped the Starbucks employee who took the call found himself "in a war dying on the frontlines." Store partners (employees) have had to respond in person and on telephone calls to other angry customers erroneously attributing Defendants' statements to Starbucks.

72.    On October 13, 2023, a Starbucks store in Rhode Island experienced an act of vandalism with a swastika painted on the front door and Stars of David painted on the door and an exterior window.



73.     Starbucks customer care has received numerous complaints, including

for example, this small sampling:

- "I will never visit Starbucks again. You are supporting Hamas terrorists…."
- "You stand with Hamas, I buy my coffee elsewhere. Whatever opinion you espouse you will alienate half or more of your customers. It amazes me you remain in business."
- "How dare Starbucks be sympathetic to a terror organization? Was your son or daughter murdered? I didn't think so. Shame on you!"
- "Will no longer buy [S]tarbucks products due to your support of Palestinian terror!!"
- "After your 'X' post in support of baby-beheading, mass-murderous Palestinian terrorists, I and my family will never again set foot in a Starbucks location for any reason. Your post was utterly despicable and disgusting. Goodbye and good riddance."
- "I am a long time customer as well as all my family members but [I] will be trashing all my [S]tarbucks products and shredding gift cards (don't even deserve to be given away or re-gifting)"
- "Shame on you supporting Hamas, coffee is about coffee, never going to be your customer again and I have been loyal for years."

These complaints as well as a number of other examples are attached hereto as

Exhibit 11. Starbucks partners (employees) working in customer care have

experienced trauma from being subject to these complaints, which have included

personal accusations of supporting genocide and exposure to graphic and violent

photos.

74.     Public officials also denounced Starbucks as a result of Defendants'

statements.  As shown below, Senator Rick Scott (R-FL) made a public statement

shaming Starbucks for supporting a terrorist organization and telling the public to "Boycott Starbucks":



75.     Further, as a result of Defendants' statements, Florida State Representative Randy Fine reshared Senator Rick Scott's post and added: "If you go to Starbucks, you are supporting killing Jews."

76.     Additionally, customers of Starbucks publicly announced their boycotting efforts and criticisms of Starbucks, including the following posts. *See also* Exhibit 12.











77. Shortly after Defendants' posts, the hashtag #BoycottStarbucks was trending on X, and people all over the world were "tweeting" and posting on various social media accounts, falsely stating that Starbucks supported terrorist organizations, the killing of innocent civilians, and multiple other things Starbucks unequivocally condemns.

78. None of these things would have happened had Defendants not used the Starbucks Marks and the Starbucks Works in their communications. Indeed, other

workers' organizations have put out statements against Israel, but the public has not called for boycotts of the respective employers where those workers' organizations do not adopt the employers' names or marks. For example, upon information and belief, the United Electrical, Radio and Machine Workers of America (UE) opposed U.S. aid to the state of Israel, but the public has not called for a boycott of GE, a principal employer for members of UE.

79.     In an attempt to mitigate the threats and harm to its partners caused by Defendants' actions, Starbucks was compelled to release a public statement on October 11, 2023 to clarify that the Defendants' communications regarding the situation in the Middle East were not made by Starbucks or endorsed by Starbucks. *See* https://stories.starbucks.com/press/2023/starbucks-condemns-acts-of-terror-strongly-disagrees-with-statements-made-by-workers-united/. Starbucks had not released a public statement prior to October 11. This timeline demonstrates that the public reaction against Starbucks arose solely from Defendants' statements.

80.     Unfortunately, Starbucks attempts to clarify the situation have not undone the irreparable harm caused by Defendants' actions, thereby necessitating the relief sought in this case.  In fact, the harm to Starbucks was further amplified following the public statement that Starbucks was compelled to release in direct response to Defendants' conduct, as customer complaints and public statements,

vandalism, and calls for boycotts have continued, further threatening safety and well-being  and harming brand reputation.

81.    Defendants' use of the Starbucks Marks continues to cause harm to Starbucks, as evinced by continued threats against Starbucks despite Starbucks attempts to clarify its position and disassociate itself from Defendants.

82.    Defendants' unauthorized use of the Starbucks Marks and Starbucks Works have caused and, if allowed to continue, will continue to cause Starbucks to suffer substantial irreparable harm due to the loss of control over its reputation and loss of consumer goodwill. Absent an injunction, there is nothing to prevent Defendants from again attempting to use Starbucks Marks and Starbucks Works in a manner that harms Starbucks partners, reputation, and brand.

## CLAIMS FOR RELIEF

### COUNT I: FEDERAL TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(c)
### (Against All Defendants)

83.    Starbucks repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

84.    Starbucks owns all of the rights, interest, and goodwill in the Starbucks Marks. It holds valid, subsisting, and incontestable registrations in the Starbucks Marks.

85.    The Starbucks Marks are famous and highly recognizable by the general consuming public. The STARBUCKS word mark and variations of the Siren logo have been used in commerce since Starbucks was founded over 50 years ago and have a global reach through Starbucks large number of cafes and presence in grocery stores and other channels in both the United States and foreign countries, and as illustrated by the BrandZ study listing Starbucks as the 27th Most Valuable Brand in the World, and "Restaurants 25" report, which ranked Starbucks as the most valuable restaurant brand in the world, among other brand rankings.

86.    Starbucks uses the Starbucks Marks in its retail stores, which sell coffee, tea, and other food and beverages, as well as Starbucks-branded merchandise. The Starbucks Marks are also used in Starbucks advertising of its products and services, including but not limited to, its website and social media accounts.

87.    The Starbucks Marks were famous and widely recognized by the general consuming public before Defendants' actions complained of in this action and no later than 1992 (for both the STARBUCKS word mark and the Siren Logo) and no later than 2011 (for the 40th Anniversary Logo).

88.    The Starbucks Marks are distinctive.

89.     The Accused Marks and use of those marks are nearly identical to the Starbucks Marks.

90.     Defendants willfully intended to create an association with the Starbucks Marks and to capitalize on the success and popularity of the Starbucks Marks.

91.     The public has actually associated Defendants' use of Accused Marks with Starbucks and the Starbucks Marks.

92.     Defendants have used the Starbucks Marks, and variations thereof, as if they were their own, and for their own gain. Upon information and belief, Defendants' use of the Starbucks Marks, or variations thereof, has been a commercial use, including soliciting funds, selling goods, advertising, publicity, and promotional activities.

93.     Defendants have used and continue to use the Starbucks Marks, or variations thereof, in connection with social media posts regarding the conflict that has continued from the events of October 7th. Defendants' use of the Starbucks Marks, or variations thereof, has led and will continue to lead the general consuming public to falsely associate Defendants with Starbucks and mistakenly attribute Defendants' views to Starbucks, including as evinced by the numerous calls for boycotts against Starbucks.

94.     Defendants' actions as described within dilute and are likely to continue to dilute the Starbucks Marks by blurring and diminishing the distinctive qualities of those marks.

95.     Defendants' actions as described within also tarnish Starbucks hard-earned reputation, causing harm including in the form of lost business, damage to reputation, and public backlash.

96.     Starbucks has no adequate remedy at law.

97.     Defendants have caused dilution by blurring and dilution by tarnishment of the Starbucks Marks and willfully intended to trade on the recognition of the Starbucks Marks. This case is an exceptional case under 15 U.S.C. § 1117(a), including because of Defendants' knowing, willful, and bad-faith dilution of the Starbucks Marks.

## COUNT II: TRADEMARK DILUTION UNDER IOWA CODE § 548.113
### (Against All Defendants)

98.     Starbucks repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

99.     The Starbucks Marks are famous, distinctive, and have acquired secondary meaning among relevant Iowa consumers.

100.    Without Starbucks authorization or license, and commencing after the Starbucks Marks became famous, Defendants are making use of the Starbucks

Marks in connection with Defendants' goods and services in a manner that impairs the distinctive qualities of, and harms the reputation of, the Starbucks Marks.

101.   The acts and conduct of Defendants complained herein constitute dilution of the distinctive quality of the Starbucks Marks by blurring and dilution by tarnishment in violation of Iowa Code § 548.113.

102.   Upon information and belief, Defendants' acts of dilution and tarnishment are willful, deliberate, and in bad faith.

## COUNT III: FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114
### (Against All Defendants)

103.   Starbucks repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

104.   Starbucks is the owner of the valid, subsisting, and incontestable federally registered Starbucks Marks identified herein.

105.   Defendants' use of the Starbucks Marks without the authorization or consent of Starbucks, such as in connection with posting on various social media accounts, soliciting funds, and selling goods, is likely to cause and has caused consumer confusion, mistake, or deception as to the source, origin, affiliation, or endorsement of the products or services offered by Defendants.

106.   Defendants' use of the Starbucks Marks as described herein constitutes infringement of the trademark and service mark rights of Starbucks in its registered marks under 15 U.S.C. § 1114.

107.   Upon information and belief, Defendants have profited from the infringement and have declined to take steps to stop such infringement.

108.   Upon information and belief, Defendants were aware of the Starbucks Marks, and Defendants committed trademark infringement willfully and with the intent to appropriate and trade upon Starbucks previously established goodwill and reputation associated with the Starbucks Marks.

109.   This is an exceptional case under 15 U.S.C. § 1117(a), particularly because Defendants knowingly, willfully, and in bad faith infringed the Starbucks Marks and have demonstrated a specific intent to infringe.

110.   Defendants' acts have caused and, if allowed to continue, will continue to cause Starbucks to suffer substantial irreparable harm due to the loss of control over its reputation and loss of consumer goodwill. Starbucks has no adequate remedy at law, and greater injury will be inflicted upon Starbucks than Defendants if not enjoined.

111.   As a result of the foregoing, Starbucks has suffered, and will continue to suffer, actual damages.

## COUNT IV: FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1125(a)
### (Against All Defendants)

112.   Starbucks repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

113.   Starbucks is the owner and user of the famous and distinctive Starbucks Marks identified herein, and all common law rights in those marks. Starbucks owns all rights, interest, and goodwill in the Starbucks Marks and valid, subsisting, and incontestable registrations in the Starbucks Marks.

114.   Defendants' use of the Starbucks Marks without the authorization or consent of Starbucks, such as in connection with posting on various social media accounts, soliciting funds, and selling goods, is likely to cause and has caused consumer confusion, mistake, or deception as to the source, origin, affiliation, or endorsement of the products or services offered by Defendants.

115.   Defendants' acts constitute common law trademark infringement, false designation of origin, and unfair competition in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a).

116.   Upon information and belief, Defendants engaged in such acts with the intent to deceive, mislead, and/or confuse relevant consumers as to whether there was an affiliation, connection, or association between Defendants and Starbucks.

117.    Upon information and belief, Defendants' conduct alleged within has actually deceived relevant consumers and/or has a tendency to deceive of a substantial number of actual and/or potential consumers.

118.    As a result of the foregoing, Starbucks has suffered, and will continue to suffer, damage, including damage to its reputation and good will.

119.    This is an exceptional case under 15 U.S.C. § 1117(a), particularly because Defendants knowingly, willfully, and in bad faith infringed the Starbucks Marks and have demonstrated a specific intent to infringe.

## COUNT V: COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
### (Against All Defendants)

120.    Starbucks repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

121.    Starbucks is the owner of the Starbucks Marks identified herein. Starbucks owns all rights, interest, and goodwill in the Starbucks Marks.

122.    Defendants' use of the Starbucks Marks without the authorization or consent of Starbucks, such as in connection with posting on various social media accounts, soliciting funds, and selling goods, is likely to cause and has caused consumer confusion, mistake, or deception as to the source, origin, affiliation, or endorsement of the products or services offered by Defendant.

123.   Defendants' acts constitute trademark infringement, false designation of origin, false affiliation, and unfair competition in violation of Iowa common law.

124.   Upon information and belief, Defendants engaged in such acts with the intent to deceive, mislead, and/or confuse relevant consumers as to whether there was an affiliation, connection, or association between Defendants and Starbucks.

125.   Upon information and belief, Defendants' conduct alleged within has actually deceived relevant consumers and/or has a tendency to deceive a substantial number of actual and/or potential consumers.

126.   As a result of the foregoing, Starbucks has suffered, and will continue to suffer, damage, including damage to its reputation and good will.

## COUNT VI: COPYRIGHT INFRINGEMENT 17 U.S.C. § 101 *et seq.*
### (Against All Defendants)

127.   Starbucks repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

128.   At all relevant times, Starbucks has owned, or has had exclusive rights in, all copyright rights in the Starbucks Works, and has had registrations for each of those works. As their owner, Starbucks enjoys exclusive rights with respect to the Starbucks Works, including the exclusive right to reproduce, distribute, display, and create derivative works of the Starbucks Works.

129.   Defendants have copied, reproduced, adapted, and/or created derivative works from, and continue to copy, reproduce, adapt, and/or create derivative works from, the Starbucks Works, without the consent or authorization of Starbucks. As illustrated above, Defendants' designs are strikingly or substantially similar to the copyright-protected material in the Starbucks Works.

130.   Upon information and belief, Defendants have used the Starbucks Works, and/or derivative works based on those works, such as in connection with posting on various social media accounts, soliciting funds, and selling goods.

131.   Defendants' unauthorized copying, reproducing, displaying, and use of the materials protected by the Starbucks Works, and/or derivative works based on those works, without consent or authorization constitutes direct copyright infringement in violation of the United States Copyright Act, 17 U.S.C. §§ 106 and 501.

132.   Upon information and belief, Defendants have access to the materials protected by the Starbucks Works and Defendants' copying is intentional.

133.   Defendants' copyright infringement has caused, and will continue to cause, Starbucks irreparable harm. Such conduct has also been willful. As a result, Starbucks has no adequate remedy at law.

## COUNT VII: CONTRIBUTORY AND/OR VICARIOUS TRADEMARK DILUTION
### (Against Workers United, d/b/a SBWU, and CMRJB)

134.   Starbucks repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

135.   Defendants Workers United, d/b/a SBWU, and CMRJB are, upon information and belief, directing or controlling the infringing activities of Iowa City SBWU, or are benefiting by such acts.

136.   Upon information and belief, Defendants, at all times relevant herein, possessed the right and ability to control and/or supervise the infringing actions and conduct of others, including but not limited to Iowa City SBWU, as alleged above.

137.   Upon information and belief, Defendants received a direct financial benefit from the infringing actions and conduct of others, including but not limited to Iowa City SBWU, as alleged above.

138.   By reason of the actions aforesaid, the dilution of the Starbucks Marks by Iowa City SBWU has been directed by, and under the control or authority of, Defendants Workers United, d/b/a SBWU, and CMRJB. Upon information and belief, Defendants Workers United, d/b/a SBWU, and CMRJB, have contributorily diluted or caused the dilution of the Starbucks Marks, or are vicariously liable for such dilution, to the detriment of Starbucks, including by intentionally inducing

Defendant Iowa City SBWU to dilute the Starbucks Marks and/or by continuing to supply the Starbucks Marks to Defendant Iowa City SBWU whom it knows or has reason to know is engaging in dilution of the Starbucks Marks. The dilution by Iowa City SBWU of Starbucks rights in its Starbucks Marks will irreparably harm Starbucks, have been willful, and will continue unless enjoined by this Court. Damages and attorneys' fees are authorized by 15 U.S.C. § 1117. Destruction of infringing articles is authorized by 15 U.S.C. § 1118.

**COUNT VIII: CONTRIBUTORY AND/OR VICARIOUS TRADEMARK INFRINGEMENT**
**(Against Workers United d/b/a SBWU, and CMRJB)**

139. Starbucks repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

140. Defendants Workers United, d/b/a SBWU, and CMRJB are, upon information and belief, directing or controlling the infringing activities of Iowa City SBWU, or are benefiting by such acts.

141. Upon information and belief, Defendants, at all times relevant herein, possessed the right and ability to control and/or supervise the infringing actions and conduct of others, including but not limited to Iowa City SBWU, as alleged above.

142.  Upon information and belief, Defendants received a direct financial benefit from the infringing actions and conduct of others, including but not limited to Iowa City SBWU, as alleged above.

143.  By reason of the actions aforesaid, the infringement of the Starbucks Marks by Iowa City SBWU has been directed by, and under the control or authority of, Defendants Workers United, d/b/a SBWU, and CMRJB.  Upon information and belief, Defendants Workers United, d/b/a SBWU, and CMRJB have contributorily infringed, caused the infringement of, or are vicariously liable for the infringement of, the Starbucks Marks, to the detriment of Starbucks, including by intentionally inducing Defendant Iowa City SBWU to infringe the Starbucks Marks and/or by continuing to supply the Starbucks Marks to Defendant Iowa City SBWU whom it knows or has reason to know is engaging in infringement of the Starbucks Marks. The infringements by Iowa City SBWU of Starbucks rights in its Starbucks Marks will irreparably harm Starbucks, have been willful, and will continue unless enjoined by this Court. Damages and attorneys' fees are authorized by 15 U.S.C. § 1117. Destruction of infringing articles is authorized by 15 U.S.C. § 1118.

## COUNT IX: CONTRIBUTORY AND/OR VICARIOUS COPYRIGHT INFRINGEMENT
### (Against Workers United d/b/a SBWU, and CMRJB)

144.    Starbucks repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

145.    Defendants Workers United, d/b/a SBWU, and CMRJB are, upon information and belief, directing or controlling the infringing activities of Iowa City SBWU, or are benefiting by such acts.

146.    Defendants knew or should have known that Iowa City SBWU was and is directly infringing the Starbucks Works.

147.    Defendants' infringements were committed willfully within the meaning of 17 U.S.C. § 504(c)(2).

148.    Upon information and belief, Defendants, at all times relevant herein, possessed the right and ability to control and/or supervise the infringing actions and conduct of others, including but not limited to Iowa City SBWU, as alleged above.

149.    Upon information and belief, Defendants received a direct financial benefit from the infringing actions and conduct of others, including but not limited to Iowa City SBWU, as alleged above.

150.   The infringements by Iowa City SBWU of Starbucks rights in its Starbucks Works will irreparably harm Starbucks, have been willful, and will continue unless enjoined by this Court.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Starbucks hereby demands a trial by jury of all issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, Starbucks prays for the following relief:

A.      For judgment that Starbucks federally registered trademarks have been diluted and infringed, and its federally registered copyrighted works have been infringed, by Defendants;

B.      Pursuant to 15 U.S.C. § 1116, Iowa Code § 548.113, and the common law of Iowa, preliminary and/or permanent injunctive relief against Defendants and those persons or entities in active concert or participation with Defendants, including their officers, agents, servants, employees, attorneys, and representatives, from using the Starbucks Marks, or imitations of those Marks, in connection with making, using, selling, offering to sell, importing into these United States, displaying, advertising any goods or services, or that otherwise is likely to cause confusion or dilution, including but not limited to (i) using any of the Starbucks registered and common

law trademarks in any way that dilutes or is likely to dilute any of the Starbucks

Marks; (ii) using any of Starbucks registered and common law trademarks including

the Starbucks Marks in connection with the operation of Defendants' businesses,

social media, promotional offers, advertising, marketing, or on Defendants'

products; and (iii) using any trademark, logo, words, or design that tends to falsely

represent or is likely to confuse, mislead, or deceive consumers, purchasers,

Defendants' customers, prospective customers or any member of the public as to the

source, sponsorship, endorsement, or affiliation of Defendants' goods or services;

C.      Pursuant to 17 U.S.C. § 502, preliminary and/or permanent injunctive

relief against Defendants and those persons or entities in active concert or

participation with Defendants, including their officers, agents, servants, employees,

attorneys, and representatives, from reproducing, making derivative works of,

distributing, or displaying the materials protected by the Starbucks Copyrights or

any substantially similar materials;

D.      Defendants be ordered, pursuant to 15 U.S.C. § 1116, to file with the

Court and to serve on counsel for Starbucks within ten (10) days after entry of the

judgment herein, a written report under oath setting forth in detail the manner in

which they have complied with the injunction ordered by the Court including a full

accounting that identifies the channels through which they have used the Starbucks

Marks and Defendants' distributor(s), reseller(s), account(s), and others to whom they have purchased or sold equipment, marketing materials, or other goods bearing the Starbucks Marks;

E.       Defendants be ordered, pursuant to 15 U.S.C. § 1118, Iowa Code §§ 548.113, 548.114, and the common law of Iowa, to deliver up to the Court for destruction or other disposition all labels, signs, prints, packaging, wrappers, receptacles, and advertisements and promotional materials infringing or diluting the Starbucks Marks, and all promotional materials, stickers and other means of making the same;

F.       Defendants be ordered, jointly and severally, pursuant to 15 U.S.C. § 1117(a), Iowa Code §§ 548.113, 548.114, and the common law of Iowa, to pay to Starbucks all damages and all of their profits from their use of the Starbucks Marks and the sale of the products diluting or infringing the Starbucks Marks, or products that falsely designate their origin, and that such damages and profits be enhanced on the basis of their willful infringement of the federally registered Starbucks Marks;

G.       Defendants be ordered, jointly and severally, to pay to Starbucks its attorneys' fees and the costs and expenses of this action pursuant to 15 U.S.C. § 1117(a), and Iowa Code §§ 548.113, 548.114, and for trebling of damages pursuant to 15 U.S.C. §§ 1117(a) and 1125(c)(5) and Iowa Code §§ 548.113, 548.114;

H.      Defendants be ordered, jointly and severally, to pay Starbucks actual damages, plus the amount of Defendants' profits attributable to the infringement, 17 U.S.C. § 504(b) and Iowa Code §§ 548.113, 548.114, and the common law of Iowa, or in the alternative, to pay to Starbucks statutory damages, as authorized by 17 U.S.C. § 504(c);

I.      Defendants deliver to be impounded during this suit all print and electronic copies of the materials protected by the Starbucks Works or their unlawful derivatives in Defendants' possession or control as authorized by 17 U.S.C. § 503 and Iowa Code §§ 548.113, 548.114;

J.      Defendants be ordered, jointly and severally, to pay Starbucks, as the prevailing party, reasonable attorneys' fees, costs, and expenses pursuant to 17 U.S.C. § 505 and Iowa Code §§ 548.113, 548.114;

K.      Defendants be ordered to pay Starbucks an award of corrective advertising in a monetary amount to rectify and dispel the confusion caused by Defendants.

L.      Pre-judgment interest at the legally allowable rate on all amounts owed; and

M.      Starbucks be awarded such further relief as this Court may deem just and proper.

Dated: November 10, 2023

OF COUNSEL:

Peter M. Brody (*pro hac vice* forthcoming)
Douglas H. Hallward-Driemeier
(*pro hac vice* forthcoming)
**ROPES & GRAY LLP**
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6807
Tel: (202) 508-4600
Fax: (202) 508-4650
Peter.Brody@ropesgray.com
Douglas.Hallward-Driemeier@ropesgray.com

Rocky C. Tsai (*pro hac vice* forthcoming)
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111-4006
Tel: (415) 315-6300
Fax: (415) 315-6350
Rocky.Tsai@ropesgray.com

S. Lara Ameri (*pro hac vice* forthcoming)
**ROPES & GRAY LLP**
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 235-7500
Lara.Ameri@ropesgray.com

Meredith Foor (*pro hac vice* forthcoming)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090
Meredith.Foor@ropesgray.com

Respectfully submitted,

/s/ *Jeffrey D. Harty*
*Jeffrey D. Harty*

Jeffrey D. Harty
Lynn C. Herndon
Nyemaster Goode, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA 50809
jharty@nyemaster.com
lherndon@nyemaster.com

-1-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I filed a copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically notify all counsel of record.

Dated:  November 10, 2023                    /s/ *Jeffrey D. Harty*
                                                                      Jeffrey D. Harty